1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRANK MENDONSA, an individual,

Plaintiff,

v.

LAND O'LAKES, INC., a Minnesota corporation; LAND O'LAKES INSURANCE SOLUTIONS, LLC, a Minnesota limited liability company; BUYPOINT SERVICES CO., LLC, a Minnesota limited liability company; ADAM CARDWELL, an individual; COREY RAMSDEN SCOTT fka COREY RAMSDEN, an individual; and DOES 1 to 50, inclusive,

Defendants.

No. 1:22-cv-00731-NODJ-BAM

**ORDER**

This matter is before the Court[1] on Defendants Land O'Lakes, Inc. ("Land O'Lakes"),

Land O'Lakes Insurance Solutions, LLC ("LOLIS"); Buypoint Services Co., LLC, ("Buypoint");

Adam Cardwell ("Cardwell"); and Corey Ramsden Scott's ("Ramsden") (collectively

"Defendants") Partial Motion to Dismiss.  (ECF No. 12.)  Plaintiff Frank Mendonsa ("Plaintiff")

---

[1]      In the interests of justice and addressing the heavy civil caseloads in the Fresno
courthouse, the undersigned resolves only the pending motion ECF No. 12.  Upon resolution of
this motion, unless or until otherwise ordered by the Court, the case will remain as currently
assigned and will retain case number 1:22-cv-00731-NODJ-BAM.

1    filed an opposition.  (ECF No. 15.)  Defendants filed a reply.  (ECF No. 19.)  For the reasons set

2    forth below, the Court hereby GRANTS in part and DENIES in part Defendants' Partial Motion

3    to Dismiss.

4    **I.        FACTUAL AND PROCEDURAL BACKGROUND**[2]

5            At some point before November 26, 2019, Plaintiff hired LOLIS to procure dairy revenue

6    protection insurance policies for the purpose of preventing a major loss in Plaintiff's revenue

7    should the price of milk drop during the year 2020.  (*See* ECF No. 1 at 2, 8.)  On November 26,

8    2019, Cardwell, an employee of LOLIS's parent company Land O'Lakes, sent Plaintiff a

9    Producers Agricultural Insurance Co. ("ProAg") application to be signed through DocuSign

10    software.  (*Id.* at 4.)  The ProAg application was a necessary early step to open an account with

11    the insurance program before an insurance policy could be obtained.  (*See id.* at 6.)  Plaintiff was

12    unfamiliar with DocuSign and did not sign the ProAg application on November 26, 2019.  (*Id.*)

13    ProAg registered the ProAg application as signed by Plaintiff on November 26, 2019, despite

14    Plaintiff not actually signing the application.  (*Id.* at 4, Ex. A.)  Later the same day, Cardwell

15    texted Plaintiff confirmation that the ProAg application had been "completed."  (*Id.* at 4.)

16            On December 10, 2019, Plaintiff received a second request urging him to sign the ProAg

17    application via DocuSign.  (*Id.* at 5.)  Plaintiff ignored the request because Cardwell had

18    previously represented that the application had already been completed.  (*Id.* at 5.)  Also on

19    December 10, 2019, the parties were made aware of an issue with the tax employer identification

20    number and the corporate name.  (*Id.*)  Despite the known deficiencies, Cardwell encouraged

21    Plaintiff to sign the contract confirming Plaintiff's coverage and premiums ("the ProAg

22    endorsement") before Cardwell resolved the issues with the tax identification number and the

23    corporate name.  (*Id.* at 5–6.)  Plaintiff signed the ProAg endorsement on December 12, 2019, via

24    DocuSign.  (*Id.*)

25            On December 13, 2019, Cardwell, Land O'Lakes Senior Manager Ramsden, and ProAg

26    underwriter Grady Stehr affirmed via email that they had resolved the ProAg application issues

27    _____

28    [2]        The following recitation of facts is taken from allegations in Plaintiff's Complaint.  (ECF No. 1.)

and confirmed Plaintiff's ProAg endorsement had been approved. (*Id.* at 6.) Also on December 13, 2019, Plaintiff received the schedule of insurance stating the policies were effective and binding as of December 12, 2019. (*Id.*) Plaintiff was unaware at this time the federal crop insurance regulations required the ProAg application be signed before December 15, 2019, in order to obtain insurance for 2020. (*Id.*) On December 30, 2019, Plaintiff received a new ProAg application, which he signed and executed on December 31, 2019. (*Id.*)

During the first quarter of 2020, Plaintiff paid his insurance premium and, through additional paperwork completed by Plaintiff and Cardwell, received an indemnity payment of $13,898.00 applied to his second quarter premium. (*Id.* at 7.) On July 22, 2020, for the second quarter, the indemnity payment was estimated to be $433,178.00. (*Id.* at 8.) On July 28, 2020, Stehr emailed Cardwell stating Stehr had "dropped the ball" and ProAg required additional paperwork to address the late signing of the ProAg application and the issue of the employer tax identification number matching to the corporate name. (*Id.*) Cardwell attempted to resolve the issues immediately through a ProAg form entitled "Agent Checklist for TIN Matching." (*Id.*)

On August 14, 2020, Plaintiff was informed for the first time that the losses greater than or equal to $200,000 required additional review of the associated policy. (*Id.* at 9.) On September 9, 2020, Plaintiff was informed ProAg had denied the claim for indemnity due to difficulties with verifying the name of the insured and the untimely signing of the ProAg application. (*Id.* at 9–10.)

Plaintiff filed this action on June 6, 2022, alleging the following claims against all Defendants: (1) negligence; (2) professional negligence; (3) breach of fiduciary duty; (4) intentional misrepresentation; (5) negligent misrepresentation; and (6) Cal. Bus. & Prof. Code §§ 17200*, et seq*. "Unfair Business Practice." (*Id.* at 1.) Defendants filed the instant Partial Motion to Dismiss on August 2, 2022. (ECF No. 12.)

## II.   STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain

1   "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

2   Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in

3   federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the

4   grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal

5   citation and quotations omitted).  "This simplified notice pleading standard relies on liberal

6   discovery rules and summary judgment motions to define disputed facts and issues and to dispose

7   of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

8       On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

9   *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every

10  reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

11  *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

12  "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

13  relief."  *Twombly*, 550 U.S. at 570 (internal citation omitted).

14      Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

15  factual allegations."  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

16  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

17  unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

18  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

19  elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

20  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

21  statements, do not suffice.").  Thus, "[c]onclusory allegations of law and unwarranted inferences

22  are insufficient to defeat a motion to dismiss" for failure to state a claim.  *Adams v. Johnson*, 355

23  F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the

24  plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

25  in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

26  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

27      Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

28  facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim

1    has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

2    reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

3    680.  While the plausibility requirement is not akin to a probability requirement, it demands more

4    than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility

5    inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

6    experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or

7    her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly

8    dismissed.  *Id.* at 680 (internal quotations omitted).

9            In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits

10   thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

11   *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *see also Daniels-Hall v.*

12   *Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true allegations

13   that contradict matters properly subject to judicial notice).

14           If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

15   amend even if no request to amend the pleading was made, unless it determines that the pleading

16   could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

17   1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995));

18   *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

19   denying leave to amend when amendment would be futile).  Although a district court should

20   freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

21   deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint."

22   *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting

23   *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

24       **III.    ANALYSIS**

25           Defendants move to dismiss: (1) the breach of fiduciary duty claim (Claim Three); (2) the

26   intentional misrepresentation claim (Claim Four); (3) the prayer for punitive damages; and (4) the

27   prayer for attorneys' fees.  (ECF No. 12.)  The Court will address each basis for dismissal in turn.

28   //

1          A.      Breach of Fiduciary Duty

2          The elements of a claim for breach of fiduciary duty are "(1) the existence of a fiduciary

3  relationship giving rise to a fiduciary duty, (2) breach of that duty, and (3) damage proximately

4  caused by the breach."  *Motorist Com. Mut. Ins. Co. v. Soltis*, No. 2:13-CV-01647- TLN, 2013

5  WL 6887968, at *4 (E.D. Cal. Dec. 31, 2013) (*citing Migliaccio v. Midland Nat. Life Ins. Co.*,

6  CV 06–1007 CASMANX, 2007 WL 316873, at *10 (C.D. Cal. Jan. 30, 2007)).  Defendants

7  argue Plaintiff failed to allege facts to support the existence of a fiduciary relationship because the

8  insurance broker-insured relationship alone is not a fiduciary relationship by law.  (ECF No. 12 at

9  10–11.)  Plaintiff argues he alleged facts to suggest Defendants became Plaintiff's agent when

10  Defendants acted on Plaintiff's behalf for the benefit of Plaintiff to obtain his dairy revenue

11  insurance policy.  (ECF No. 15 at 8.)  Plaintiff states the creation of the agency relationship also

12  created the fiduciary relationship, which was then breached by Defendants' intentional

13  misrepresentations.  (*Id.*)

14          This Court has previously "join[ed] numerous others in refusing to expand the doctrine of

15  fiduciary duty to include insurance brokers."  *Motorist*, 2013 WL 6887968, at *4 .  In *Motorist*,

16  this Court relied upon a California Court of Appeal's interpretation that a "fiduciary relationship

17  will not be presumed from the relationship between an insurer [or insurance broker] and its

18  insured."  *Id.* (*citing Hydro–Mill Co., Inc. v. Hayward*, *Tilton & Rolapp Ins. Associates, Inc.*, 115

19  Cal. App. 4th 1145, 1153 (2004)).  "[A] plaintiff must allege specific facts that would give rise to

20  the formation of a fiduciary relationship."  *Id.*  Something more than the traditional duties of an

21  insurance broker must be alleged to show the insurance broker has taken up the mantle of

22  becoming their client's fiduciary.  *See id.* at *4 (*citing Hydro–Mill Co.*, 115 Cal. App. 4th at

23  1158).  If "the gravamen of this lawsuit is [the defendant's] failure to execute its obligations as an

24  insurance broker," and not as a fiduciary, then "regardless of appellation, [the causes of action]

25  amount to a claim of professional negligence."  *Hydro–Mill Co*, 115 Cal. App. 4th at 1159.

26          Plaintiff alleges Defendants have, on Plaintiff's behalf, prepared and filled out forms

27  necessary to obtain insurance and receive indemnity payments, negotiated with ProAg to resolve

28  issues within Plaintiff's ProAg application, advised Plaintiff on the steps necessary to procure

1    dairy revenue protection insurance, and advised Plaintiff on when he should take those steps.

2    (ECF No. 1 at 4–10.)  Plaintiff has failed to convince the Court that the alleged facts do not

3    precisely describe the relationship of an insurance broker and an insured.

4           As the alleged facts concern Defendants' failures as Plaintiff's insurance brokers, and not

5    as Plaintiff's fiduciary, Plaintiff's allegations resound within professional negligence.  *See*

6    *Motorist*, 2013 WL 6887968 at *4.  Plaintiff's claim for breach of fiduciary duty is insufficient to

7    withstand a Rule 12(b)(6) challenge for failing to allege facts supporting the existence of a

8    fiduciary relationship and additional analysis of whether facts allege a breach of fiduciary duty is

9    unnecessary.

10          Accordingly, Defendant's Partial Motion to Dismiss is hereby GRANTED as to Claim

11   Three with leave to amend.

12                       B.      Intentional Misrepresentation

13          Defendants argue Plaintiff's facts strongly support the interpretation Defendants were

14   operating on good faith by using ProAg's representations to act on Plaintiff's behalf.  (ECF No.

15   12 at 9–10.)  Defendants also argue they cannot be held liable for any charges related to fraud as

16   fraud requires scienter and the alleged facts indicate Defendants had no knowledge or reason to

17   believe the information they provided Plaintiff was false.  (*Id.* at 9.)

18          In opposition, Plaintiff argues the element of scienter was established when Cardwell and

19   Ramsden held themselves out as experts, yet failed to inform Plaintiff of simple, relevant

20   deadlines relevant to their areas of expertise.  (ECF No. 15 at 4.)  Plaintiff further argues:

21   Defendants recklessly disregarded the truth when they did not personally check to ensure the

22   application was sufficient before assuring Plaintiff it was complete; and Defendants induced

23   Plaintiff to sign the ProAg Endorsement before the tax employer identification number and

24   corporate name issues were resolved.  (*Id.*)

25          The elements of intentional misrepresentation under California law are: "(1)

26   misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4)

27   justifiable reliance; and (5) resulting damage."  *Nevada Fleet LLC v. FedEx Corp.*, No. 217-CV-

28   01732-TLN-KJN, 2022 WL 891245, at *9 (E.D. Cal. Mar. 25, 2022) (*quoting Helo v. Bank of*

7

*Am. Servicing Co.*, No. 1:14-cv-01522-LJO, 2015 WL 4673890, at *3 (E.D. Cal. Aug. 5, 2015)).

The Court agrees with Defendants that the facts alleged in the Complaint fall short of indicating Defendants had knowledge of the falsity or had the intent to defraud Plaintiff. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiff alleges Cardwell made representations he knew "to be false and made said representations with the intent to deceive and defraud and induce Plaintiff to" sign the ProAg endorsement. (ECF No. 1 at 20.) While malice may be alleged generally, this statement exists only as a legal conclusion which appears to be contradicted by the alleged facts.

"[M]ere negligence in investigation of the facts, in the sense of oversight or unintentional error, is not alone enough to constitute malice. It is only when the negligence amounts to a reckless or wanton disregard for the truth, so as to reasonably imply a wilful disregard for or avoidance of accuracy, that malice is shown." *Roemer v. Retail Credit Co.*, 3 Cal. App. 3d 368, 372 (1970). Exhibit A to the Complaint shows the ProAg website had accepted Plaintiff's application as signed by Plaintiff on November 26, 2019. (*See id.* at Ex. A.) On December 10, 2019, Defendants encouraged Plaintiff to sign the ProAg endorsement, and the following day Cardwell received confirmation from ProAg that the issues with the application had been resolved and the ProAg endorsement was effective and binding. (ECF No. 1 at 5-6, Ex F.) It is unreasonable and implausible to find malice and intent to defraud from Plaintiff's statement of facts. Viewing the facts completely in Plaintiff's favor suggests Defendants failed to investigate the truth of the completion of the ProAg paperwork and the resolution of the tax identification number, which does not reach the threshold of malice.

Additionally, to meet the "intent to defraud" element, the Complaint must contain allegations concerning how the misrepresentations Defendants made would benefit them. *See Dougherty v. Bank of Am., N.A.*, 177 F. Supp. 3d 1230, 1247 (E.D. Cal. 2016); *Nevada Fleet*, 2022 WL 891245, at *9. Plaintiff does not allege any benefit Defendants received for misrepresenting the ProAg application as complete or for recommending Plaintiff sign the ProAg

1   endorsement.  Absent facts to suggest a motive for the misrepresentations, the Complaint does not

2   contain a plausible theory of Defendants having an intent to defraud Plaintiff.

3      For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss Claim Four

4   with leave to amend.

5         C. <u>Prayer for Punitive Damages</u>

6      A plaintiff may only recover punitive damages where clear and convincing evidence

7   shows that the defendant has been guilty of oppression, fraud, or malice.  Cal. Civ. Code § 3294.

8   The Court has authority to dismiss a prayer for punitive damages under Rule 12(b)(6) if a plaintiff

9   does not sufficiently allege facts to support a cognizable legal theory demonstrating the grounds

10  for punitive damages.  *Guarantee Real Estate v. Hanover Ins. Co.*, No. 1:14-cv-00860-TLN-MJS,

11  2014 WL 5817536 at *5 (E.D. Cal. Nov. 7, 2014).

12     Defendants argue Plaintiff's prayer for punitive damages should be dismissed because the

13  alleged facts do not support a finding of intentional malice, oppression, or fraud as is necessary in

14  California for a grant of punitive damages.  (ECF No. 12 at 13.)  Plaintiff argues punitive

15  damages are available as a remedy for both his intentional misrepresentation claim and breach of

16  fiduciary duty claim, which both contain fraud elements.  (ECF No. 15 at 9.)  Above, the Court

17  granted Defendants' Partial Motion to Dismiss Plaintiff's claim for intentional misrepresentation

18  precisely because Plaintiff has failed to allege facts suggesting a legal theory for intentional fraud

19  and has only stated a conclusory legal theory for malice.  Plaintiff's claim for breach of fiduciary

20  duty was also dismissed.  As Plaintiff does not state with particularity or give clear notice of the

21  nature of his claim for punitive damages, offering no cognizable legal theory, punitive damages

22  are unavailable and subject to a Rule 12(b)(6) dismissal.  *See Guarantee Real Estate,* 2014 WL

23  5817536 at *5 (*citing Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1147 (E.D. Cal. 2010)).

24     Accordingly, Defendant's Partial Motion to Dismiss is hereby GRANTED as to Plaintiff's

25  prayer for punitive damages with leave to amend.

26        D. <u>Prayer for Attorneys' Fees</u>

27     In the Complaint, Plaintiff prays for "attorney fees and costs authorized by Business and

28  Professions Code §§ 17200 *et al*."  (ECF No. 1 at 35.)  Defendants argue attorneys' fees are

strictly unavailable because Plaintiff is an individual and not a business, therefore the California

Business and Professions Code ("Cal. Bus. & Prof. Code") does not apply.  (ECF No. 12 at 13.)

Defendants further argue the California Code of Civil Procedure § 1024.5 ("§ 1024.5") also does

not apply in this case because there is no important public benefit involved.  (ECF No. 19 at 9.)

Plaintiff concedes there is no right to attorney fees available under the Cal. Bus. & Prof. Code.

(ECF No. 15 at 9.)  However, Plaintiff argues an award of attorneys' fees is appropriate under §

1021.5 because, through the violation of the Cal. Bus. & Prof. Code, there is an important public

interest in preventing insurance brokers from misrepresenting facts to their clients, particularly to

farmers in an agricultural state such as California.  (*Id.* at 10.)  In their briefs, the parties dispute

only whether a significant benefit is conferred by this litigation.

Eligibility for § 1021.5 attorneys' fees is established when:

> (a) a significant benefit, whether pecuniary or nonpecuniary, has been
> conferred on the general public or a large class of persons, (b) the necessity
> and financial burden of private enforcement, or of enforcement by one public
> entity against another public entity, are such as to make the award appropriate,
> and (c) such fees should not in the interest of justice be paid out of the
> recovery, if any.

Cal. Civ. Proc. Code § 1021.5.  A California court of appeals recently stated, "[w]hen

determining whether a lawsuit conferred a significant benefit on the general public or a large class

of persons, a trial court should perform 'a realistic assessment, in light of all the pertinent

circumstances, of the gains which have resulted in a particular case.'"  *McCormick v. Pub.*

*Employees' Ret. Sys.*, 90 Cal. App. 5th 996, 1005 (2023) (quoting *Woodland Hills Residents*

*Assn., Inc. v. City Council,* 23 Cal. 3d 917, 939–940 (1979)).  Essential to *McCormick*'s analysis

was the effect the final opinion had as an appellate published decision addressing statutory rights

of a larger group.  *See id.* at 1012.  In *McCormick*, the court awarded § 1021.5 attorney fees in a

post-trial motion in large part because the case had previously created binding precedent.  *See id.*

The *McCormick* analysis requires the determination of whether a significant benefit has

been conferred upon the public to depend on a factual analysis which can only be completed after

the conclusion of the litigation.  Therefore, the Court considers it appropriate to join with several

other courts and finds that dismissing a prayer for attorney fees under § 1021.5 is premature at the

pleading stage. *Open Text, Inc. v. Northwell Health, Inc.*, No. 2:19-CV-09216-SB-AS, 2020 WL 8025315, at *6 (C.D. Cal. Dec. 11, 2020); *M Resorts, Ltd. v. New England Life Ins. Co.*, No. 19-CV-1545-WQH-AGH, 2019 WL 6840396, at *6 (S.D. Cal. Dec. 16, 2019); *Cones v. Parexel Int'l Corp.*, No. 3:16-cv-03084-L-BGS, 2017 WL 2908789, at *7 (S.D. Cal. July 6, 2017) ("[D]etermining whether awarding attorneys' fees under § 1021.5 is appropriate requires a factor based analysis that seems impossible to properly undertake at the pleading stage."); *see Howard v. First Horizon Home Loan Corp.*, No. 12-cv-05735-JST, 2013 WL 6174920, at *24 (N.D. Cal. Nov. 25, 2013).

For these reasons, Defendant's motion to dismiss Plaintiff's prayer for attorney fees is hereby DENIED.

**IV.   CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part Defendants' Partial Motion to Dismiss (ECF No. 12) as follows:

1. Defendants' motion is GRANTED as to Claim Three, the breach of fiduciary duty claim;

2. Defendants' motion is GRANTED as to Claim Four, the intentional misrepresentation claim;

3. Defendants' motion is GRANTED as to the prayer for punitive damages; and

4. Defendants' motion is DENIED as to Plaintiff's prayer for attorney fees.

Although the Court doubts Plaintiff can allege additional facts that demonstrate the existence of a fiduciary relationship or provide a showing of intentional misrepresentation, the right to amend should be granted liberally. Accordingly, Plaintiff is granted thirty (30) days from the date of this Order to file an amended complaint. Defendants are afforded twenty-one (21) days from the date Plaintiff files an amended complaint to file a responsive pleading. If Plaintiff opts not to file an amended complaint, this case shall proceed on the remaining claims, and Defendants' answer shall be due not later than twenty-one (21) days from Plaintiff's deadline for filing an amended complaint. Additionally, parties are reminded and encouraged to contact the magistrate judge to request a settlement conference should they believe the conference would be

fruitful, as indicated in the previous status report.  (ECF No. 22.)

      IT IS SO ORDERED.

Date:  January 16, 2024

Troy L. Nunley
United States District Judge